UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHIRLEY H.,

                  Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

CASE NO. C18-5962-BAT

**ORDER REVERSING THE COMMISSIONER'S FINAL DECISION**

       Plaintiff seeks review of the denial of her applications for Supplemental Security Income and Disability Insurance Benefits.  She contends the ALJ erred in assessing her testimony, the medical opinions, and lay statements.[1]  Dkt. 12 at 2.  For the reasons below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

       Plaintiff is currently 49 years old, has a ninth-grade education, and has worked as a fast food worker and manager, and an in-home caregiver.  Tr. 47-48, 51-52, 317.  In June 2015, she

---

[1] Plaintiff also assigns error to the ALJ's residual functional capacity ("RFC") assessment and the step-five findings, but in doing so only reiterates arguments made elsewhere.  Dkt. 12 at 17-18.  Thus, these issues need not be addressed separately.

applied for benefits, alleging disability as of December 21, 2011.[2]  Tr. 102-03, 282-94.  Her

applications were denied initially and on reconsideration.  Tr. 170-73, 179-90.  The ALJ

conducted a hearing on August 15, 2017 (Tr. 37-101), and subsequently found Plaintiff not

disabled.  Tr. 15-31.  As the Appeals Council denied Plaintiff's request for review, the ALJ's

decision is the Commissioner's final decision.  Tr. 1-6.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[3] the ALJ found:

**Step one:**  Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date.

**Step two:**  Plaintiff's post-traumatic stress disorder, neurocognitive disorder, major depressive disorder, and status-post brain aneurysm are severe impairments.

**Step three:**  These impairments did not meet or equal the requirements of a listed impairment.[4]

**RFC:**  Plaintiff can perform light work with additional limitations: she can occasionally climb ramps and stairs, and can never climb ladders, ropes, and scaffolds.  She can occasionally balance and crawl.  She can tolerate occasional exposure to vibration, hazards (such as open water, flames, and heights), and temperature and humidity extremes.  She can understand, remember, and apply short and simple instructions while performing routine, predictable tasks in an environment that is not fast-paced.  She can make simple work-related decisions.  She can tolerate occasional workplace changes.  She can have occasional interaction with the general public and co-workers.

**Step four:**  Plaintiff cannot perform her past work.

**Step five:**  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

Tr. 15-31.

//

---

[2] Plaintiff amended her alleged onset date to January 1, 2014, at the hearing.  Tr. 44-45.

[3] 20 C.F.R. §§ 404.1520, 416.920.

[4] 20 C.F.R. Part 404, Subpart P, Appendix 1.

**DISCUSSION**

**A.    Plaintiff's Testimony**

The ALJ discounted Plaintiff's testimony as inconsistent with the objective medical evidence, her work history, and her activities.  Tr. 28.  Plaintiff contends these reasons are not clear and convincing, as required in the Ninth Circuit.[5]  *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

**1.    Objective Medical Evidence & Treatment Record**

The ALJ cited evidence of normal mental status examinations, normal neurological examinations, and conservative mental health treatment, finding that evidence inconsistent with Plaintiff's allegations of disabling cognitive limitations caused by her aneurysm.  Tr. 28. Plaintiff raises several objections to the ALJ's rationale.

First, Plaintiff emphasizes she amended her alleged onset date to January 2014, not the time of her aneurysm (December 2010).  Dkt. 12 at 9.  The Court agrees that to the extent the ALJ relied on medical evidence that predates the amended alleged onset, that evidence would not contradict Plaintiff's allegation of disability.  However, the ALJ also cited medical evidence that pertains to the adjudicated period and contradicts Plaintiff's allegations of disabling impairments.  Tr. 28 (citing Tr. 649, 695, 699, 708, 716, 721, 750, 775, 780, 786, 791, 800, 805, 811, 861-62, 878, 900, 918).  The ALJ also cited Plaintiff's counseling notes, from 2016 and 2017, as evidence that Plaintiff's mental conditions were treated conservatively and that treatment was helpful.  Tr. 28 (citing Tr. 866-919).

---

[5] Plaintiff also devotes a portion of her brief to summarizing her own testimony.  Dkt. 12 at 10-15.  This summary is unnecessary and does not establish error in the ALJ's decision.  This order focuses on the specific legal errors Plaintiff identifies.

Even if the ALJ could not solely rely on objective evidence to discount Plaintiff's testimony, as Plaintiff argues (Dkt. 12 at 9-10), the ALJ did not err in considering the degree to which the objective evidence corroborated Plaintiff's self-report. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Moreover, evidence of conservative treatment and improvement with treatment also supports the ALJ's assessment of Plaintiff's testimony. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (stating that "evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment"); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) ("The record reflects that Tommasetti responded favorably to conservative treatment including physical therapy and the use of anti-inflammatory medication, a transcutaneous electrical nerve stimulation unit, and a lumbosacral corset. Such a response to conservative treatment undermines Tommasetti's reports regarding the disabling nature of his pain.").

### 2. Plaintiff's Activities

The ALJ cited evidence that Plaintiff improved after her aneurysm and was thereafter able to work, drive, focus, think clearly, take care of her family, travel to Europe. Again, to the extent these activities predate Plaintiff's amended alleged onset date, these activities do not contradict Plaintiff's allegation of disability. But the ALJ did cite treatment notes from the adjudicated period referring to "normal" activities of daily living, as well as Plaintiff's 2015 description of activities (driving, shopping, cleaning and laundry, watching movies, making blankets on a loom, and using Facebook) that require more cognitive capacity than she alleged.

Tr. 28 (citing Tr. 698, 701, 706, 711, 738, 743, 747, 773, 778, 783, 789, 794, 798, 803, 808, 982). Plaintiff contends that none of her activities show that she could work (Dkt. 12 at 10), which may be true, but the ALJ cited them as inconsistent with her testimony. Plaintiff described limitations at the hearing that are arguably inconsistent with the activities cited by the ALJ. *See, e.g.*, Tr. 71 (Plaintiff's testimony that she has not driven since her aneurysm in 2010), 77-78 (Plaintiff's testimony that she cannot fold laundry). To the extent that the activities cited by the ALJ contradict Plaintiff's self-report, the ALJ did not err in relying on those activities as a reason to discount her testimony. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for transferable work skills").

Because the ALJ provided legally sufficient reasons to discount Plaintiff's testimony, the ALJ's assessment of her testimony is affirmed.

**B.     Lay Witness Evidence**

The record contains a lay statement written by Plaintiff's friend, Christine Petty, as well as observations recorded by agency employee W. Andrillon. Tr. 324, 334-41. The ALJ described Ms. Petty's statement as similar to Plaintiff's statements, and found the record did not corroborate the extent of the limitations described by Ms. Petty. Tr. 29. The ALJ did not discuss the agency employee's observations. Plaintiff argues the ALJ erred in failing to provide germane reasons to discount these lay statements. *See Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) ("If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness.").

Plaintiff does not dispute the ALJ's finding that Ms. Petty's statement is similar to her own testimony. *See* Dkt. 12 at 17. Because the ALJ provided legally sufficient reasons to

discount Plaintiff's testimony, as explained *supra*, it follows that the ALJ provided sufficient reasons to discount Ms. Petty's similar testimony. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony").

Likewise, the agency employee's statements are also similar to Plaintiff's self-report, regarding her inability to understand and follow questions (Tr. 324), and thus because the ALJ properly discounted Plaintiff's self-report, any error in the ALJ's failure to discuss the agency employee's observations is harmless. *See Molina v. Astrue*, 674 F.3d 1104, 1118-19 (9th Cir. 2012) ("Molina has not suggested any basis for concluding that an ALJ's failure to discuss a lay witness's testimony expressly is likely to affect the outcome in situations where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited.").

For these reasons, Plaintiff has not established the ALJ harmfully erred in assessing the lay evidence, and the ALJ's determinations are therefore affirmed as to that evidence.

## C. Medical Opinions

Plaintiff challenges the ALJ's assessment of various medical opinions, each of which the Court will address in turn.

### 1. Alexander Patterson, Psy.D.

Dr. Patterson examined Plaintiff in November 2015 and completed a narrative report describing her symptoms and limitations. Tr. 730-34. The ALJ gave little weight to Dr. Patterson's opinion because it was based on one examination, wherein Plaintiff presented as

disoriented with impaired cognitive functioning, yet she had presented to her treating sources as consistently oriented with normal cognitive functioning.  Tr. 29.[6]

As noted by Plaintiff (Dkt. 12 at 5), some of the treatment notes cited by the ALJ pertain to appointments focused on physical complaints, but they nonetheless address Plaintiff's mental status.  Furthermore, the ALJ also cited some of Plaintiff's mental health treatment notes that describe her as oriented with normal cognitive functioning.  *See, e.g.*, Tr. 878, 900, 918.  Although Plaintiff points to some treatment notes that describe limitations, those notes do not describe Plaintiff as disoriented or cognitively impaired, and therefore do not contradict the ALJ's finding.  *See* Dkt. 12 at 5 (citing Tr. 869-70, 908, 911).  Thus, Plaintiff has not established the ALJ erred in finding Plaintiff's presentation to Dr. Patterson was inconsistent with remainder of the record, which renders his opinion less probative as to the extent of Plaintiff's limitations.  *See Tommasetti*, 533 F.3d at 1041 (not improper to reject an opinion presenting inconsistencies between the opinion and the medical record).

### 2.     Terilee Wingate, Ph.D.

Dr. Wingate examined Plaintiff in November 2015 and May 2016 and completed a narrative report and a DSHS form psychological opinion, respectively, describing Plaintiff's symptoms and limitations.  Tr. 736-41, 764-69.  During her November 2015 examination, Dr. Wingate performed memory testing, in addition to a mental status examination.  Tr. 739, 741.

The ALJ gave little weight to both of Dr. Wingate's opinions, finding them to be based "extensively" on Plaintiff's non-credible self-report.  Tr. 29.  This reasoning fails to account for the objective memory testing Dr. Wingate performed during the November 2015 examination, to

---

[6] The ALJ stated that Dr. Patterson examined Plaintiff for DSHS, which is inaccurate.  Tr. 29.  Plaintiff mentioned this inaccuracy, but has not shown that this error resulted in any prejudice.  Dkt. 12 at 5.

which Dr. Wingate referred in her conclusion to that examination report. *See* Tr. 741 ("She cannot sustain attention to tasks throughout a daily or weekly work schedule without interruption from anxiety, depressed mood, memory impairment and anger."). The ALJ's reasoning fails to account for the full extent of Dr. Wingate's 2015 examination and the clinical findings that she cited to support her conclusions, and is therefore erroneous. *See Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017) ("[T]he rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness."). On remand, the ALJ shall reconsider Dr. Wingate's 2015 opinion and either credit it or provide legally sufficient reasons to discount it.

### 3. Miscellaneous

Plaintiff devotes a portion of his brief to summarizing medical evidence but fails to connect this summary with any specific error in the ALJ's decision. Dkt. 12 at 7-8. This summary is therefore unnecessary and does not advance Plaintiff's appeal.

### 4. State Agency

Lastly, Plaintiff contends that the ALJ erred in giving more weight to non-examining medical opinions rather than examining opinions, stating that such an approach is contrary to relevant case law and regulations. Dkt. 12 at 8. Plaintiff cites no authority requiring an ALJ to give less weight to a non-examining opinion, and thus has failed to establish error in the ALJ's decision on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. §

405(g).  On remand, the ALJ should reconsider Dr. Wingate's 2015 opinion, develop the record and reassess Plaintiff's RFC as needed and proceed to the remaining steps as appropriate.

DATED this 14th day of August, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge